# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **Cynthia H.,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**ANDREW SAUL,** )<br>**Commissioner of Social Security,** )<br>)<br>**Defendant.** ) | No. 19-cv-01962<br><br>Magistrate Judge M. David Weisman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cynthia H. appeals the Social Security Administration Commissioner's decision denying her application for benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

### Background

Plaintiff applied for benefits on October 9, 2015, alleging a disability onset date of September 1, 2015. (R. 124.) Her application was denied initially on February 10, 2016, and upon reconsideration on July 30, 2016. (*Id.*) Plaintiff requested a hearing, which was held by an Administrative Law Judge ("ALJ") on November 8, 2017. (R. 28.) On May 2, 2018, the ALJ issued an unfavorable decision finding Plaintiff not disabled. (R. 124–36.) The Appeals Council declined to review the decision (R. 1–4), leaving the ALJ's decision as the final decision of the Commissioner. *See Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

### Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992)

1

(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While generous, this standard "is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under the regulations, the Commissioner must consider: (1) whether the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the claimant's impairment meets or equals any listed impairment; (4) if not, whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether he is unable to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and if that burden is met, the burden shifts at step five to the Commissioner to provide evidence that the claimant is capable of performing work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2015, the alleged onset date. (R. 126.) At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease and joint disease of the cervical status-post 2015 discectomy, laminectomy, and fusion procedures; and chronic pain disorder." (R. 127.) At step three, the ALJ found that Plaintiff did not have "an impairment or combination of

impairments that meets or medically equals the severity" of one of the listed impairments. (R. 129.) This finding led the ALJ to conclude at step four that Plaintiff has the residual functional capacity to "perform light work" with certain exceptions. (R. 130–35.) At step five, the ALJ determined that Plaintiff is "capable of performing past relevant work as a radiation therapist and a resource coordinator/administrator." (R. 135.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (R. 136.)

**A.) Subjective Symptom Analysis**

In assessing subjective symptoms, an ALJ must consider a variety of factors, including objective medical evidence, daily activities, "the location, duration, frequency, and intensity of pain or other symptoms," and use of medication. SSR 16-3p[1], 2016 WL 1119029, at *7; *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("The ALJ must . . . support credibility findings with evidence in the record."). An ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). The Seventh Circuit has stressed that an ALJ's credibility determinations are "'afforded special deference because the ALJ is in the best position to see and hear the witness and determine credibility.'" *Eichstadt v. Astrue*, 534 F.3d 663, 667–68 (7th Cir. 2008); *see also Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to

---

[1] The Court notes that Defendant has issued new guidance for evaluating symptoms in disability claims, which "eliminat[es] the use of the term 'credibility'" to "clarify that subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2016 WL 1119029, at * 1 (Mar. 16, 2016).

observe the claimant testifying."). Credibility determinations should therefore only be overturned if they are "'patently wrong.'" *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004); *see also Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) ("So long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn his credibility determination unless it is patently wrong.").

Plaintiff contends that the ALJ's credibility finding was not supported by substantial evidence because the ALJ relied solely on the objective medical evidence rather than considering other evidence in the record. (Dkt. 12 at p. 7.) The Court disagrees with Plaintiff's characterization of the ALJ's subjective symptom analysis. In addition to addressing the objective evidence, the ALJ also reasonably considered Plaintiff's own statements and provided a detailed summation of Plaintiff's testimony regarding her symptoms and limitations. (R. 130–31.) The ALJ discussed, for example, how Plaintiff's neck pain "radiates into her shoulder blades and down both arms" as well as into her chest, making it difficult to breathe. (R. 130.) Plaintiff's allegations regarding "constant" discomfort were also noted. (R. 130.) Moreover, the ALJ considered how the pain "worsens with sitting, standing, and all physical activity," and that Plaintiff requires assistance with basic daily tasks such as bathing, grooming, and cutting her food. (R. 130–31.) And contrary to Plaintiff's assertions, the ALJ acknowledged that rather than providing full pain relief, Plaintiff's medications merely "'take the edge off'" and have unpleasant side effects such as dizziness and drowsiness. (R. 131.)

The ALJ appropriately evaluated Plaintiff's alleged symptoms in the context of the objective medical evidence. *See, e.g.*, *Back v. Barnhart*, 63 Fed. App'x 254, 259 (7th Cir. 2003) (noting that "the regulations direct the ALJ to evaluate medical evidence and to look for objective medical evidence that corroborates a claimant's subjective statements of pain"); *Lopez v. Astrue*,

4

807 F. Supp. 2d 750, 761 (N.D. Ill. 2011) ("Although an ALJ cannot ignore a claimant's subjective reports of pain simply because they are not fully supported by objective medical evidence, discrepancies between objective evidence and self-reports may suggest symptom exaggeration."). In doing so, the ALJ found that certain medical records supported a history of neck pain and headaches that restricted Plaintiff's ability to work, (R. 131–32; 737–38; 1105–06), while other medical evidence indicated Plaintiff's limitations are not debilitating (e.g. Plaintiff had a good range of motion in her neck; an "unremarkable physical examination" shortly after filing for disability; a consistently normal gait, the ability to squat with only mild difficulty; and full strength in all limbs (R. 697; 711–15; 725–26; 1064; 1449).) Moreover, the ALJ discussed how post-surgical diagnostic studies have not been "fully consistent" with Plaintiff's subjective complaints. (R. 133.) For example, a March 2016 MRI revealed that Plaintiff's spinal cord had "successfully moved posteriorly away from the anterior narrowing," leaving Plaintiff "very well decompressed through this region." (R. 133; 1074.) In discussing these findings as well as additional record support, the ALJ built a "logical bridge" between the evidence and her conclusion that Plaintiff's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence" (R. 131). *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) ("The ALJ is not required to discuss every piece of evidence, but must build a logical bridge from evidence to conclusion.").

The Court notes, however, that the ALJ's subjective symptom evaluation was not flawless. She assigned "little weight" to Plaintiff's daughter's statements for two reasons: (1) the objective medical evidence establishes that Plaintiff's severe impairments do not render Plaintiff "incapable of performing all work" and (2) Plaintiff's daughter does not appear to have the "medical training necessary to make exacting observations as to medical signs and symptoms or their intensity." (R.

5

135.) Although an ALJ may question the reliability of third-party statements, rejecting a statement because of a family member's lack of medical training is improper. Indeed, SSR 16-3p expressly contemplates that an ALJ consider opinions of non-medial sources. *See* SSR 16-3p, 2016 WL 1119029, at * 1 (Mar. 16, 2016) ("Other sources may provide information . . . including non-medical sources such as family and friends . . . ."). It would therefore be illogical for a family member's lack of medical training to bar consideration of their third-party statement. *See, e.g.*, *Dorian W. v. Berryhill*, No. 17 CV 50327, 2019 WL 1572560, at *4 (N.D. Ill. Apr. 11, 2019) (finding the ALJ erred by rejecting a third-party statement because the individual was not "an acceptable medical source"). This error was not fatal though. As the ALJ reasonably evaluated Plaintiff's symptoms by considering the requisite factors, including among others, objective medical evidence, daily activities, intensity of pain, and use of medication (discussed above), the ALJ's subjective symptom evaluation was not "patently wrong." *See, e.g.*, *Lopez v. Astrue*, 807 F. Supp. 2d 750, 760 (N.D. Ill. 2011) ("The credibility determination need not be flawless . . . .").

**B.) Residual Functional Capacity Assessment**

Plaintiff further contends that the ALJ erred in her RFC assessment by failing to account for Plaintiff's headaches and difficulty moving her neck in multiple directions. (Dkt. 12 at p. 10.) The ALJ found that Plaintiff could perform "light work" with certain limitations. (R. 130.) In rendering an RFC assessment, an ALJ must "consider all functional limitations and restrictions that stem from medically determinable impairments, including those that are not severe." *Outlaw v. Astrue*, 412 Fed. App'x 894, 897 (7th Cir. 2011). While an ALJ "need not discuss every piece of evidence," she must "logically connect the evidence" to the conclusions reached. *Id.*

Here, the ALJ reasonably considered the record evidence in finding Plaintiff's headaches controlled by medication. Plaintiff argues that the ALJ mischaracterized the intensity of Plaintiff's

6

headaches by interpreting a treatment note that Plaintiff's headaches are "mostly under control" (R. 725) as indication that the headaches are "successfully controlled with Topamax." (R. 127.) This relatively positive treatment note, however, coupled with Plaintiff's own testimony that she only experiences headaches about once a week lasting from between 15 minutes and an hour, provides enough support for the ALJ's findings that Plaintiff's headaches did not significantly limit her ability to perform basic work activities. (R. 72–73.) Notably, Plaintiff neglects to cite any medical evidence to support her claim that headaches would cause her to be "off-task" more than 15 percent of the day. (*See* Dkt. 12 at p. 12.) An ALJ need only include limitations in her RFC determination that are "supported by the medical evidence and that the ALJ [finds] to be credible." *Outlaw*, 412 Fed. App'x at 898.

With respect to neck mobility issues, Plaintiff fails to show how she experienced greater limitations than what the ALJ already found and accommodated. Indeed, the ALJ chronicled Plaintiff's medical history with neck pain and discussed medical evidence that both supported and challenged Plaintiff's allegations. (R. 131–35.) Among other evidence, the ALJ pointed to treatment notes in 2015 documenting Plaintiff's neck pain (R. 565), a physical examination in November 2015 that demonstrated "full range of motion" in Plaintiff's neck (R. 697), a January 2016 consultative examination that found a decreased range of motion in the cervical spine and a tender posterior neck (R. 717), a March 2016 MRI revealing that Plaintiff's spinal cord had "successfully moved posteriorly away from the anterior narrowing," leaving Plaintiff "very well decompressed through this region," (R. 1074), and a September 2016 Functional Capacity Assessment that indicated Plaintiff's neck pain did not prevent her from lifting up to 17 pounds above her shoulders occasionally throughout a 7-hour workday. (R. 931–37.) The ALJ also considered the opinions of two state agency physicians who examined Plaintiff's ability to perform

7

a range of work, and, indeed, gave more weight to the physician who limited Plaintiff to "light" rather than "medium" work. (R. 99–101; 115–17.) Notably, Plaintiff has not challenged the weight the ALJ assigned to the medical opinions addressed above and the Court will not perform such an undertaking *sua sponte*. By restricting Plaintiff to a range of light exertional work, the ALJ credited Plaintiff's allegations in part and fashioned an RFC that accommodated her neck mobility issues. As the ALJ reasonably weighed the evidence presented and sufficiently explained her findings, the Court has no reason to disturb the RFC assessment. *See, e.g.*, *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) ("We do not reweigh the evidence or substitute our own judgment for that of the ALJ; if reasonable minds can differ over whether the applicant is disabled, we must uphold the decision under review.").

**Conclusion**

For the reasons set forth above, the Court affirms the Commissioner's decision.

**SO ORDERED.**  **ENTERED:** December 18, 2019

_____
**M. David Weisman**
**United States Magistrate Judge**